**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

United States of America,  Case No. 3:10CR380

        Plaintiff

v.  **ORDER**

Charles McDuffy,

        Defendant

The defendant is charged with possession of a firearm under the disability of a prior felony conviction. According to the government, the weapon fell from his partially lowered undershorts as police officers were removing him from his vehicle. They had responded, along with firefighters, to the scene of an accident. The defendant, who appeared extremely intoxicated, had driven into another car.

As presently and tentatively calculated, the defendant's Guideline Range is sixty-one to seventy-three months imprisonment.

Thereafter, following the defendant's indictment on the instant charge, federal authorities accomplished the defendant's arrest at his home only through display of substantial armed force. While the defendant finally came out without incident, he did so only after a period of time during

which, as I understand the government's representation, the arresting officers were apprehensive that there was a risk of violent resistance to their efforts to take him into custody.

Thereafter detained per Magistrate Judge's Order due to risk of flight and danger to the community, the defendant, through CJA counsel, has requested reconsideration of the detention order.

At a May 16, 2011, hearing the defendant asked to be released to the third-party custody of his parents. His mother is employed, his father has recently been laid off.

There is no question that the defendant has a history of prolonged and serious alcohol abuse. He has, as well, been a drug user. The government, through the AUSA, represented, and I credit its representation, that the defendant has been a member of a Toledo-area group affiliated with the Crips criminal enterprise. At the time of his arrest, the defendant was not employed.

Government counsel also pointed out that the defendant's criminal record is lengthy (though with but one prior felony conviction). This is the defendant's first federal charge.

The government's attorney also stated that no defendant appearing in this court during his tenure as an AUSA (for upwards of thirty years), had accumulated a record equivalent to the defendant's of failures to appear in local Municipal and Common Pleas Courts.

I granted the defendant's request to be released to the custody of his parents pending further proceedings. I also required "location monitoring" (*i.e.*, GPS 24/7 monitoring) and home detention (with leave to attend alcohol, substance abuse and other counseling as directed by the Pretrial Services and Probation Officer and to seek employment with the prior approval of the PTS/PO).[1]

---

[1] The defendant should also, with the Officer's prior approval, be able to leave his residence to confer with counsel.

The Officer can impose other conditions of release as may appear appropriate.

The government asked for a written statement of reasons; this order responds to that request.

The government also asked for a stay to permit it to appeal. I denied that request. I explain that decision in this order as well.

## Discussion

Section 3142 of Title 18 of the United States Code prescribes the controlling standard:

(a) In general.--Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be--

>(1) released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;
>
>(2) released on a condition or combination of conditions under subsection (c) of this section;
>
>(3) temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or
>
>(4) detained under subsection (e) of this section.

\* \* \* \* \*

(e) Detention.--(1) If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

\* \* \* \* \*

(g) Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--

>(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>(2) the weight of the evidence against the person;

>   (3) the history and characteristics of the person, including--
>
>>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. §§ 3142(a), (e), (g).

I understand the government's contentions and concerns. But in this instance I find them, despite the support those contentions and concerns find in the defendant's past record and substantial likelihood of conviction and imprisonment, overstated and unpersuasive.

This is so because of a unique circumstance in this case: namely, albeit thanks to a combination of apparent administrative oversight and, it is likely, a degree of self-help on the defendant's part, he has shown himself to be willing to do what he needs to do to do something else with himself and his life than he had done for about the last fifteen or more years.

Before the events giving rise to this case occurred, a Lucas County Common Pleas Judge sentenced the defendant to a six month term for a state offense. In view of the defendant's history of

4

severe alcoholism,[2] the Judge ordered him to serve that sentence in a community treatment center (CTF).

In the meantime, our grand jury indicted the defendant on the present charge. Though, apparently, a federal detainer was lodged with the CTF, it released the defendant rather than causing his transfer into federal custody.[3]

The defendant went home. He stated during the hearing that he attended AA meetings seven days a week and looked for a job.

After about two weeks at liberty, the defendant went to his attorney's office. His lawyer told him he had to surrender. After his attorney called the U.S. Attorney's Office, the defendant self-surrendered the next day.[4]

During that two week period, the defendant showed that he could abide by the conditions that I have now imposed. This is so, even though, of course, no one, and certainly no court, had imposed those conditions—he imposed them on himself. He may well have done so to avoid apprehension—to fly beneath the radar—but what matters is not motivation but conduct.

That conduct corroborates the defendant's statements during the hearing about wanting to deal with his alcohol addiction.

---

[2] According to the PTS Report, the defendant told the Officer that he drank a fifth of liquor daily.

[3] The record does not presently show why and how the detainer was not honored or even whether it was lodged with the CTF. The defendant had, though, earlier had been arraigned, while in state custody, on the instant charge. The government informed the court that detention was moot due to the defendant's then-current state custody order. Defense counsel offered no prospective conditions of release. (Minutes of 9/14/10 hearing).

[4] No one sought review of the original detention order until the defendant's attorney filed the motion that led to the defendant's release following the May 16, 2011. hearing.

Sometimes for some people, no matter what their past shows, something happens that causes some change—sometimes a substantial change—in what they want and are willing to do and become.

That may have happened here. It may not have. But it looks enough like it has that I am *firmly* convinced, on the basis of what I saw and learned during the hearing, that the conditions I have imposed suffice to assure the defendant's appearance and protect the community, and that further detention is not warranted.[5]

The circumstances of the charged offense and defendant's past record, including the record of failures to appear, are but two portions of what I must consider in determining whether it is reasonably likely that the defendant will appear and not endanger the community.

The government appears to believe that they are, if not the only, then the primary (and controlling) things that I should consider.

If that is the government's position in this or any other case, it is not my view. Of equal (*at least*) concern are whether some combination of the fourteen conditions and means of control set forth in 18 U.S.C. § 3142(c)(1)(B) will reasonably assure appearance and protect the community.

Once the government moves for a detention order, the burden is on it to produce *prima facie* evidence sufficient to meet the requirement of § 3142(e) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"

---

[5] I am just as firmly convinced that to continue detention, and to disregard the record of the defendant's efforts between his release from the CTF and surrender into federal custody would risk extinguishing his incentive, whatever its origin and source, to do what he can to stay sober and law-abiding.

Where the rebuttable presumption arises under 18 U.S.C. § 3142(f)(1)(E),[6] the burden of production shifts to the defendant to come forward with proposed conditions sufficient to ensure appearance and community safety.

Where the presumption does not arise, the burden is on the government to produce evidence that no such conditions exist. That is what a court must find before it can order detention, and placing the duty on the government, if it seeks detention, to make out a *prima facie* case *via* either the rebuttable presumption in light of the charged offense or affirmative proof (albeit of the negative) is appropriate.

That being said, it will, as a practical matter, be incumbent on the defendant to be prepared to propose conditions of release, as he is better able to ascertain whether one or more suitable third-party custodians are available and willing to serve, persons with equity in real property are willing to post their property to secure compliance with conditions of release, or other effective means of restraint and oversight exist reasonably to assure appearance and protect the community.

Where a court finds that the government has met its burden of proof (or the defendant, where required to do so, has not rebutted the presumption of detention), it must state its reasons for that decision. Mere checking of the box on the preprinted form is not enough. Instead, the court should clearly and comprehensively state, either on the record or in writing or both, which conditions it has

---

[6] The government did not rely on that provision at the May 16, 2011, hearing. Cursory research has not uncovered a Sixth Circuit decision on the issue of whether a charge of simply being in unlawful possession of a firearm gives rise to the rebuttable presumption. *Compare U.S. v. Dillard*, 214 F.3d 88 (2d Cir.2000) (presumption arises) *with U.S. v. Lane*, 252 F.3d 905 (7th Cir.2001) (presumption does not arise); *see also U.S. v. Tadlock*, 399 F.Supp.2d 747, 751 (S.D. Miss. 2005). For purposes of this opinion only, I assume that a charge of being a felon in possession of a firearm is within § 3142(f)(1)(E) ("any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm[.]").

7

considered and found wanting and why that is so. A decision to deprive someone of his liberty before conviction requires nothing less.

In addition, as I have recently instructed the Magistrate Judges in the Western Division, they are to notify each detained defendant whose case is pending on my docket of the right to review by me.[7]

Turning to the case at hand, I understand the government's contentions and position. They are not unreasonable; nor are they unreasonably expressed.

But I am not persuaded. And I do not believe that the government gives sufficient attention to the conditions I have imposed and their likely efficacy.

The defendant will be under quasi-house arrest. Not total home confinement. With prior approval of the PTS/PO, he may leave the home in the company of one of his parent-custodians for specified purposes. The purposes for which he may leave his residence—to attend AA meetings and similar counseling sessions, seek employment and meet with counsel—are limited.

Among other conditions, the custodians are to permit no alcohol in their residence.

The defendant's location and movements will be recorded by GPS monitoring. Any effort to tamper with or remove the unit will immediately be known.

His third-party custodians—his parents, including a father who can be with him whenever the defendant leaves—understand the jeopardy they will place themselves in if they knowingly permit a risk of violation to occur. I made clear that either can change his or her mind at any time, notify

---

[7] While § 3142 contains no such requirement, it is essential to ensure that detention does not occur without a meaningful opportunity for further review and consideration. We routinely tell sentenced defendants that they may have a right to appeal—even where they have waived the right to appeal in a plea agreement. Doing likewise when a defendant is detained is likely to be far more meaningful than the talismanic, and almost always meaningless incantation following sentencing.

8

PTS that he or she no longer is willing to act as custodian, and thereon will be relieved of that obligation.

They also understand their duty to notify PTS is they apprehend the possibility of a violation of any condition of release by the defendant. If a violation occurs, they will be called on to explain why they did not anticipate its occurrence.

**They also understand that I will cite them for contempt in case of any noncompliance with their custodial duties as explained to and accepted by them in open court. If I find dereliction on their part, I will sanction them to the fullest extent possible.**

I believe that not only the defendant's parents, but the defendant as well understand the consequences of noncompliance with the conditions of release. He knows the jeopardy he will create for his parents. He knows the risks to himself.

Most importantly, he understands the benefit of compliance in the event of conviction: namely, a potentially more favorable outcome at sentencing. Among much else resulting from the decision in *U.S. v. Booker*, 543 U.S. 220 (2005), is the enhanced importance of release pending trial or plea and sentencing. A defendant who satisfies conditions of release can hope for (though he may not necessarily get) a sentence lower than the Guideline Range. A defendant who cannot comply with conditions of release can expect a sentence within or above the Range.

The law prohibits detention absent a finding that no conditions suffice *reasonably—not absolutely—*to ensure appearance and community safety. That command has constitutional roots: the most fundamental being the presumption of innocence and the right to be at liberty until found guilty beyond a reasonable doubt.

My view of my duty in light of that command and the constitutional protections it implements is that I am must find that available means and methods of monitoring, oversight, supervision and assistance are unlikely reasonably to assure appearance and protect the community before I deprive a charged defendant of his liberty pending trial.

In this case the means and methods appear sufficient. No alcohol in the house. A parent at hand 24/7. GPS monitoring. Counseling and AA to stay sober. Two parents together aware of what can happen if they disregard their obligations under my order appointing them custodians. Supervision by a capable PTS/Probation officer. A defendant without resources to go anywhere, much less successfully remain a fugitive for the rest of his life.

Most importantly, a defendant who, when he helped himself to a period of apparently undeserved and unearned freedom, used that self-created opportunity to do exactly many of the things I now have ordered him to do.

I decline to stay this order because I am persuaded that the government's right to secure appellate review is not impeded—and, more importantly, I am also persuaded that the risk of flight and of danger to the community are *de minimus* if the defendant is allowed to go home while awaiting the outcome of any such appeal.

It is, therefore,

ORDERED THAT:

1. The defendant be, and he hereby is forthwith to be released from the custody of the U.S. Marshal's Service pending further proceedings in this case; and

2. The government oral motion for a stay of this order be, and the same hereby is denied.

So ordered.

/s/James G. Carr
Sr. United States District Judge